BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE: UNITED STATES SOCCER FEDERATION PAY DISCRIMINATION LITIGATION | ) ) ) ) | MDL No. |

**BRIEF IN SUPPORT OF MOTION OF PLAINTIFFS FOR TRANSFER OF ACTIONS TO THE CENTRAL DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

Plaintiffs[1] in the putative class action *Morgan et al. v. United States Soccer Federation*, Case No. 2:19-cv-01717, pursuant to 28 U.S.C. §1407, respectfully submit this brief in support of their Motion for Transfer of Actions, and specifically for the transfer of the related action, *Solo v. United States Soccer Federation*, Case No. 3:18-cv-05215 JD, to the Central District of California for coordinated or consolidated pretrial proceedings. These actions involve common questions of law and fact that arise from the United States Soccer Federation's discriminatory pay practices and are appropriate for MDL treatment.

I.   **BACKGROUND**

Plaintiffs, twenty-eight female professional soccer players, filed a putative class and collective action complaint in the Central District of California on behalf of all similarly situated current and former members of the United States Senior Women's National Soccer Team ("WNT"). The case is against their employer, the United States Soccer Federation ("USSF"), for its policies and practices of gender discrimination, which policies include paying Plaintiffs and the

---

[1] The plaintiffs in *Morgan et al. v. United States Soccer Federation*, Case No. 2:19-cv-01717, are Alex Morgan, Megan Rapinoe, Becky Sauerbrunn, Carli Lloyd, Morgan Brian, Jane Campbell, Danielle Colaprico, Abby Dahlkemper, Tierna Davidson, Crystal Dunn, Julie Ertz, Adrianna Franch, Ashlyn Harris, Tobin Heath, Lindsey Horan, Rose Lavelle, Allie Long, Merritt Mathias, Jessica McDonald, Samantha Mewis, Alyssa Naeher, Kelley O'Hara, Christen Press, Mallory Pugh, Casey Short, Emily Sonnett, Andi Sullivan and McCall Zerboni.

class they seek to represent significantly less than their male counterparts, the members of the United States Senior Men's National Soccer Team ("MNT"), for substantially equal work, and denying them equal treatment and working conditions. Specifically, Plaintiffs allege violations of the Equal Pay Act, 26 U.S.C. § 206(d) and Title VII of the Civil Rights Act of 1974, 42 U.S.C. §2000e *et seq.*, and seek damages and injunctive relief.

The complaint in the related action, *Solo v. United States Soccer Federation*, makes precisely the same allegations and asserts the same claims on behalf of a single player. The main differences between the actions are that Solo does not seek injunctive relief, only damages, and is not seeking to represent a class.

**II.     ARGUMENT**

The Panel should transfer and consolidate these cases in a single district because: (1) the actions involve numerous common questions of fact and law, and (2) consolidation will convenience the parties and witnesses, and will promote the just and efficient conduct of this litigation. *See* 28 U.S.C. § 1407(a). Moreover, the Central District of California is the judicial district best suited to ensure the just and efficient pre-trial conduct of the litigation because (1) there is a strong nexus between the Central District of California and the parties to the current litigation; (2) the Central District of California has the judicial resources to efficiently manage this litigation; and (3) the Central District of California is the choice of forum of the entire group of 28 players on the current WNT, while Ms. Solo is a single former player on the team. Finally, the Central District of California is a superior choice for pre-trial consolidation and coordination to the Northern District of Illinois, which Plaintiffs anticipate to be the preferred forum choice of the USSF, given that it is has moved to transfer the *Solo* case to that district.

**A.     Transfer of the Actions for Coordination and Consolidation is Appropriate Under 28 U.S.C. § 1407**

**1.     These Actions Involve Multiple Common Questions of Fact and Law.**

When multiple actions pending in different districts contain one or more common questions of fact, such actions may be coordinated or consolidated in one district for pretrial proceedings. *See* 28 U.S.C. § 1407(a).  The two actions at issue here share multiple common questions of fact and law, including but not limited to:

- Whether USSF constitutes a single establishment employing the members of the WNT and MNT under the Equal Pay Act;

- Whether female WNT employees are paid at wage rates less than the wage rates paid to male MNT employees;

- Whether female WNT employees and male MNT employees perform substantially equal or similar work, when viewed as a composite of skill, effort, and responsibility;

- Whether female WNT employees and male MNT employees perform work under similar working conditions;

- Whether the differential in pay between female WNT employees and male MNT employees is not due to bona fide seniority, merit, or incentive system or any other factor other than sex.

These common issues give the Panel the authority to order the transfer, consolidation, and coordination of these actions to a single judicial district.

## 2. Transfer to a Single Judicial District Will Convenience the Parties and Witnesses and Promote the Just and Efficient Conduct of the Actions.

According to the Manual for Complex Litigation, the following four goals govern whether transfer will facilitate the convenience of the parties and promote the just and efficient conduct of the cases: (1) eliminating duplicative discovery; (2) avoiding conflicting rulings and schedules; (3) reducing litigation cost; and (4) saving time and effort of the parties, attorneys, witnesses, and courts.  Manual for Complex Litigation (Fourth), § 20.131, at 220.  Here, coordination and consolidation of these cases serves all four goals.

First, as described above, because the cases pose substantially similar questions involving virtually the same facts and individuals, centralization will prevent duplicative discovery requests and multiple depositions of the same witnesses who have information relevant to both actions.  *See In re Auto Body Shop*, 2014 WL 3909000, at *1-2 (J.P.M.L 2014) (finding transfer appropriate to eliminate duplicative discovery in actions involving shared factual core because a single judge could "structure pretrial proceedings to accommodate all parties' legitimate discovery needs while ensuring that common witnesses are not subjected to duplicative discovery demands").

Second, transfer and consolidation of the actions in a single district is in the interest of justice because it will prevent multiple inconsistent rulings and protocols regarding the same factual and legal issues.  Proceeding separately and, in all likelihood, on different schedules, creates a potential race to *res judicata* or collateral estoppel, which could prejudice the litigants (and perhaps an entire class), including risking the denial of a jury right, in the event that any portion of the outcome of one case is deemed determinative of issues in the other case.  *See, e.g.*, *In re Enron Securities Derivative & ERISA Litig.*, 196 F. Supp. 2d 1375, 1376 (J.P.M.L. 2002) (granting a transfer in part to prevent inconsistent pretrial rulings).  Section 1407 transfer is the most efficient way to ensure that pretrial processes across the cases are uniformly litigated and

adjudicated, thereby avoiding a situation where multiple courts reach contrary conclusions and subject litigants to conflicting responsibilities and obligations.

Third, litigation costs will be reduced through the elimination of multiple court appearances in both venues to resolve the same issues, in addition to the aforementioned discovery and motion streamlining which will result in significant cost savings. If the actions continue in separate districts, the overlapping factual inquiries would inconvenience the parties and the witnesses as they will be forced to make appearances in both venues to resolve the same issues. Sparing the parties and witnesses the expense and inconvenience of participating in overlapping litigation in multiple judicial districts is precisely the Panel's charge.

Finally, in addition to the benefits that will be conferred upon the parties, attorneys, and witnesses from the efficiencies described above, the Central District of California and the Northern District of California (or the Northern District of Illinois if the *Solo* case were transferred) will be spared the need to make separate inquiries into overlapping legal and factual issues.

The Panel has previously transferred cases to form MDLs based upon a similar number of pending actions. *See, e.g., In re NCAA Grant-In Aid Cap Antitrust Litig.,* MDL No. 2541, Dkt. No. 1 (J.P.M.L. June 4, 2014) (ordering transfer where two actions were pending in two districts); *In re: Park W. Galleries, Inc., Mktg. & Sales Practices Litig.*, 645 F. Supp. 2d 1358, 1360 (J.P.M.L. 2009) (ordering transfer where three actions were pending in three districts); *In re: Optical Disk Drive Prod. Antitrust Litig.*, 701 F. Supp. 2d 1382, 1383 (J.P.M.L. 2010) (ordering transfer of five cases pending in two total districts); *In re Wireless Telephone Replacement Protection Programs Litig.*, 180 F. Supp. 2d 1381, 1382 (J.P.M.L. 2002) (granting transfer of three consumer protection cases); *In re Philadelphia Life Ins. Co. Sales Practices Litig.*, 149 F. Supp. 2d 937, 938 (J.P.M.L.

2001) (granting transfer of two deceptive insurance sales cases and finding that such transfer would promote the just and efficient conduct of the litigation).

### B. The Central District of California Is the Proper Transferee Forum

There are numerous reasons why the Central District of California is the superior forum for the location of these cases in comparison to either the Northern District of California or the Northern District of Illinois (the district to which the USSF has moved to transfer the *Solo* case, which motion is pending before the court in the Northern District of California).

**First**, the Central District of California has a strong nexus to the operative facts, as the training facility for the WNT is located there, in Carson, California. Indeed, the WNT has extensive practices and plays games in Carson—making it a primary site of the discrimination. This creates a significant nexus between the litigation and the district that makes it the most appropriate forum. *See In re Ryder Truck Lines Inc. Employment Practices Litigation*, 405 F. Supp. 308, 308 (J.P.M.L. 1975) (transferring separate Title VII lawsuits to the Northern District of Georgia because the employer's policies impacted that particular part of the United States). In this regard, it is particularly important that the USSF, the lone defendant in both actions, maintains its U.S. Soccer National Training Center in Carson, California in the Central District of California, as the location of this key facility in which Plaintiffs work for the USSF distinguishes this district from either the Northern District of California or the Northern District of Illinois. *See In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 398 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005) (recognizing a nexus between a particular transferee forum and the litigation as an important factor); *In re: TD Bank, N.A., Debit Card Overdraft Fee Litigation*, 96 F. Supp. 3d 1378, 1379 (J.P.M.L. 2015) (transferring to the District of South Carolina and noting, "[a]lthough TD Bank is not headquartered in the District of South Carolina, it maintains sizeable operations in South Carolina"). USSF entered into a 25-year lease on its National Training Center in 2002, and

has invested almost $6 million in improvements to the facilities. And, at this center, among other things, USSF holds major training camps each year, including to evaluate WNT players, and hosts WNT games. By contrast, USSF does not have any facilities in the Northern District of California and does not have any training facility for the WNT in the Northern District of Illinois.

While the USSF does have its headquarters in Chicago, Plaintiffs do not have any reason to go to Chicago each year as part of their job responsibilities. This is in contrast to Carson, where the players practice extensively every year. In addition, only a very small fraction of the collective bargaining negotiations to set the discriminatory pay of the WNT players took place in Chicago. Because the USSF negotiators and the WNT negotiators were located throughout the country (including in the Central District of California), the vast majority of the negotiations leading to the disparity in pay took place in New York, Oregon, or other locations outside of Chicago, including multiple negotiation sessions in Los Angeles within the Central District of California. Two Los Angeles Plaintiffs, Christen Press, who had significant involvement in the collective bargaining agreement negotiation sessions, and Alex Morgan, one of the proposed class representatives who also participated in bargaining, attended Los Angeles negotiations in person. The longest of the negotiating sessions took place in Portland, Oregon and lasted for eleven days, and other sessions took place in New York, Dallas, and Washington D.C. The fact that USSF has its headquarters in Chicago thus does not establish a nexus with the conduct at issue, because the pay disparity was not extensively negotiated there in comparison to other locations.

Further, Plaintiffs allege they have been subjected to discriminatory treatment across the country and world, through inferior accommodations, playing and traveling conditions, and promotional support. Given the broad geographical scope of USSF's business operations regarding the WNT players, the disparate geographic locations of the collective bargaining

7

negotiations with the WNT, and the nation-wide discriminatory treatment of the WNT players, the import of USSF's headquarters in Chicago is minimal in the "nexus" analysis.

**Second,** many key witnesses are located in the Central District of California, and many other witnesses are scattered throughout the country, while very few are located in either the Northern District of California or the Northern District of Illinois.  The most relevant witnesses are likely to be the Plaintiffs, and as mentioned above, two key plaintiff-player witnesses live in the Central District of California.  Overall, 14 of the 28 Plaintiffs live on or near the West Coast, and only two reside near Chicago.  Other key witnesses for the Plaintiffs may be their collective bargaining representatives, none of whom reside in the Northern District of Illinois.

The key participants and witnesses from USSF are no more connected to the Northern District of Illinois.  In fact, one of the key witnesses from the USSF, Russell Sauer, who was its primary attorney and outside negotiator during the collective bargaining sessions, resides and works, and conducted a number of the acts alleged in the Complaint, in the Central District of California. Mr. Sauer is an especially important witness because he made one of the discriminatory comments alleged in the Complaint during the collective bargaining negotiations.  Another important USSF witness whose statements are quoted in the Complaint, President Carlos Cordeiro, resides in New York, as does his predecessor as USSF President, Sunil Gulatti.  Both of these important witnesses have no connection to the Northern District of Illinois.  Indeed, while USSF may point to its headquarters in Chicago as being a reason to transfer the cases there, the reality is that almost all of its important witnesses in the case are located outside of Chicago, including not only Messrs. Sauer, Cordeiro and Gulatti, but also Congresswoman Donna Shalala, a major participant in the collective bargaining negotiations, who resides in Florida, and Kathryn Ruemmler, USSF's other attorney during the negotiations, who resides in Washington D.C.  Where

relevant witnesses are "scattered throughout the country," it is appropriate to transfer to a forum where "some of the witnesses" are located nearby. *See In re CBS Color Tube Patent Litig.*, 329 F. Supp. 540, 541-42 (J.P.M.L. 1971). The Central District of California, where Plaintiffs Morgan and Press and USSF counsel and negotiator Sauer reside, fit this description. Furthermore, a third Plaintiff, McCall Zerboni, also resides in the Central District of California in the off-season with her family.

**Third**, the location of documents does not favor any of the three districts. The 28 players are located around the country, with three located in the Central District of California, two in the Northern District of Illinois, and two in the Northern District of California. Their documents will thus be located in many different places. On the USSF side, as noted above, most of the negotiators for the USSF are not located in Chicago and one key negotiator is located in the Central District of California, with the others scattered around the country. The same is true of the negotiators for Plaintiffs' union, who are also located around the country. The documents from these negotiators will thus not be centrally located in one place. As for the USSF records on compensation and finances, which are presumably located in Chicago, those documents are all electronic in nature, very limited in scope, and easily produced electronically in any forum. In fact, the financial statements of the USSF are publicly available on its website and accessible from any location, and the compensation to the WNT and the MNT is set forth in collective bargaining agreements, which are also easily accessible in any forum.

**Fourth**, although all three districts are very capable, the Central District of California is better suited to handle this case compared to the Northern District of California or the Northern

District of Illinois. According to the Federal Court Management Statistics[2] and the JPML statistics on pending MDLs,[3] the Northern District of California has 19 pending MDL matters with 14 judgeships, the Northern District of Illinois has 10 pending MDL matters with 22 judgeships, and the Central District of California has only 7 pending MDL matters with 28 judgeships and 4 visiting judges. Further, the time for a civil case to go from filing to trial is a whopping 38.3 months in the Northern District of Illinois, and 29.2 months in the Northern District of California, compared to just 21.5 months in the Central District of California. The Panel considers the number of MDL cases pending in a district, favoring districts presiding over fewer MDL cases than other proposed districts. *See In re Horizon Organic Milk Plus DHA Omega-3 Marketing and Sales Practice Litig.*, 844 F. Supp. 2d 1380, 1381 (J.P.M.L. 2012) (considering the relatively few MDL cases pending in the district in deciding to transfer to the Southern District of Florida).

**Fifth**, the plaintiffs' choice of forum strongly favors the Central District of California. While the *Solo* complaint was filed first, that is not determinative, and the entire current roster of the WNT, 28 Plaintiffs strong, have chosen the Central District of California as their preferred forum. Further, Ms. Solo's case does not seek class action status, and Ms. Solo filed her complaint before receiving a right to sue letter from the EEOC, while Plaintiffs, who have the interests of a class to represent, could not afford to risk a failure to exhaust administrative remedies by filing their action before the right to sue letter was received. The overwhelming choice of forum for all but one plaintiff is the Central District of California.

---

[2] Available at https://www.uscourts.gov/sites/default/files/fcms_na_distcomparison1231.2018.pdf.
[3] Available at https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-February-15-2019.pdf.

Moreover, the *Solo* case has not progressed beyond the Rule 12 stage, and the judge in the *Solo* case has stayed any consideration of USSF's motion to dismiss because USSF, as previously noted, filed a motion to transfer the case to the Northern District of Illinois. That motion, however, no matter how decided, would not resolve the issues before this Panel, which are to determine whether to establish an MDL for the two actions and in which court to do so. Indeed, even if the court in the Northern District of California transfers that case to the Northern District of Illinois, this Panel would still have to decide where it is most appropriate to locate the MDL for the two actions.

### III.   CONCLUSION

For all of the above reasons, Plaintiffs respectfully request that the Panel order the transfer of the related action, *Solo v. United States Soccer Federation*, Case No. 3:18-cv-05215 JD, for coordinated or consolidated pretrial proceedings to an MDL court in the Central District of California.

Dated: March 8, 2019                               WINSTON & STRAWN LLP

By: /s/ *Jeffrey L. Kessler*
Jeffrey L. Kessler
jkessler@winston.com
David G. Feher
dfeher@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 294- 6700
Facsimile: (212) 294-4700

Cardelle B. Spangler
cspangler@winston.com
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558-5600

Facsimile: (312) 558-5700

Diana Hughes Leiden
dhleiden@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue, 38th Floor
Los Angeles, California 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Jeanifer E. Parsigian
jparsigian@winston.com
WINSTON & STRAWN LLP
101 California St., 35th Floor
San Francisco, CA 94111
Telephone: (491) 591-1000
Facsimile: (491) 591-1400

Attorneys for Plaintiffs
ALEX MORGAN, MEGAN RAPINOE,
BECKY SAUERBRUNN, CARLI LLOYD,
MORGAN BRIAN, JANE CAMPBELL,
DANIELLE COLAPRICO, ABBY
DAHLKEMPER, TIERNA DAVIDSON,
CRYSTAL DUNN, JULIE ERTZ,
ADRIANNA FRANCH, ASHLYN HARRIS,
TOBIN HEATH, LINDSEY HORAN, ROSE
LAVELLE, ALLIE LONG, MERRITT
MATHIAS, JESSICA MCDONALD,
SAMANTHA MEWIS, ALYSSA NAEHER,
KELLEY O'HARA, CHRISTEN PRESS,
MALLORY PUGH, CASEY SHORT,
EMILY SONNETT, ANDI SULLIVAN AND
MCCALL ZERBONI