BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE: UNITED STATES SOCCER | ) | MDL No. 2890 |
| FEDERATION PAY DISCRIMINATION | ) | |
| LITIGATION | ) | |
| | ) | |

**PLAINTIFFS' CONSOLIDATED REPLY TO DEFENDANT'S AND HOPE SOLO'S OPPOSITION TO PLAINTIFFS' MOTION FOR TRANSFER OF ACTIONS TO THE CENTRAL DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

Plaintiffs in the putative class action *Morgan, et al. v. United States Soccer Federation*, Case No. 2:19-cv-01717-RGK-AGR respectfully submit this reply to Defendant's and Hope Solo's oppositions to Plaintiffs' Motion to Transfer *Solo v. United States Soccer Federation*, Case No. 3:18-cv-05215 JD, to the Central District of California pursuant to 28 U.S.C. § 1407 for coordinated or consolidated pretrial proceedings.

**INTRODUCTION**

In their oppositions to Plaintiffs' Motion for Transfer of Actions, neither USSF nor Ms. Solo seriously challenge Plaintiffs' motion on its merits, barely, if at all, seeking to contradict Plaintiffs' arguments that both of the following requirements of 28 U.S.C. Section 1407(a) have been met: (1) the actions involve numerous common questions of fact and law, and (2) consolidation will convenience the parties and witnesses, and will promote the just and efficient conduct of this litigation. *See* Mot. at 2-6. All parties agree that the issues in the two cases substantially overlap and that coordination is desirable to avoid the possibility of inconsistent results, duplicative proceedings and inefficient case administration.

Where the parties disagree is over where the two overlapping cases should be heard and over the most appropriate procedural mechanism for achieving a coordinated case administration. Ms. Solo argues that the cases should both be heard in the Northern District of California under

the first-to-file doctrine. The USSF argues that the cases should be moved to the Northern District of Illinois, even though no plaintiff has chosen that forum. Both the USSF and Ms. Solo also argue that a Section 1404 transfer is the means by which coordination of these overlapping cases can best be achieved as opposed to an MDL transfer order by the Panel. Each of these arguments should be rejected.

First, as discussed below, a transfer under Section 1404 is not an effective mechanism for achieving the efficient judicial administration of these cases. The reason is that there is no means to assure that the district court in the N.D. Cal. and the district court in the C.D. Cal. would reach the same conclusion on where the cases should be located in dueling transfer motions in those courts. Moreover, it is possible that players who are not named plaintiffs will file additional individual actions in the future, as Ms. Solo has done, further multiplying the possibility of inconsistent rulings on where the cases should be located. This is precisely the type of situation that MDLs were created to address. An MDL will ensure pre-trial coordination and consolidation in a single forum—a result that cannot be assured through competing Section 1404 motions in multiple fora.

Second, the proper forum for consolidation of these actions is the Central District of California, which is the choice of all but one of the plaintiffs and which has the greatest nexus and contacts with the claims at issue. The first-to-file doctrine advocated by Solo is not applicable where, as here, the issue is an MDL transfer—not a 1404 motion—and where the first-filed forum has no material connection to the case. Further, the *Morgan* plaintiffs are not parties to the *Solo* action, and the *Morgan* plaintiffs have a superior weight with respect to their choice of forum because they seek to represent the entire class and Solo is just a single putative class member who has indicated that she will opt out of any class. The Northern District of Illinois, which no plaintiff

has selected, is not the superior forum under all applicable MDL factors. Indeed, as no case has been filed there, no case would be tried there, making it far more efficient to transfer the cases to the forum in which the *Morgan* class action will ultimately go to trial.

## ARGUMENT

### I. Section 1407 Is the Superior Method of Coordinating These Cases.

#### a. Section 1404 Motions Will Not Guarantee Any Coordination.

Relying heavily on their interpretations of the "first-to-file" rule, USSF and Solo argue that transfer of the *Morgan* case under Section 1404 will better resolve the coordination issues. But a Section 1404 motion will not assure any coordination at all. The reason is that the USSF is arguing for a transfer of the *Solo* case to the Northern District of Illinois, Solo is arguing all cases should be heard in the Northern District of California, and the *Morgan* plaintiffs and class are advocating for the Central District of California. Two different judges—one in N.D. Cal. and one in C.D. Cal.—ultimately would decide dueling transfer motions. It is also possible that additional actions may be filed by other players before other courts. In this procedural posture, there is no way to ensure that there will be case coordination other than through an MDL transfer. Any claimed preference for Section 1404 transfer to centralization exists (as stated in the case law USSF itself cites) only where there is "some reasonable prospect . . . that the multidistrict character of [the] litigation could be resolved through the resolution of . . . *pending* Section 1404 motions." *In re Gerber Probiotic Products*, 899 F. Supp. 2d 1378, 1379 (J.P.M.L. 2012) (emphasis added). That is not the situation here. The only pending motion to transfer is USSF's motion to transfer the *Solo* case to the Northern District of Illinois. If that motion is granted, it will render meaningless Solo's first-to-file arguments. Further, whether or not that motion is granted, there is no assurance that the judge in *Morgan* will transfer that case to any other district. If the *Solo* case stays in the

3

Northern District of California because the USSF transfer motion is rejected, there is no reason to believe that the USSF would even seek to transfer the *Morgan* case to be joined with *Solo* as it has already stated it does not believe that N.D. Cal is a proper forum. And, if the motion to transfer *Solo* is granted, the *Morgan* plaintiffs will strongly advocate against any motion to transfer its case out of C.D. Cal. to the Northern District of Illinois. Under these circumstances, and where other additional cases by individual players might be filed in the future, there is not a "reasonable prospect" that Section 1404 will obviate the need for MDL coordination.

Indeed, the JPML has found a Section 1404 transfer to be superior to MDL centralization mainly where, in contrast to here, there were "indications from counsel that they were amenable to Section 1404 transfer" to the same forum so there was little doubt that the efficiencies of coordinated litigation would be achieved. *See, e.g.*, *In re Schnuck Markets, Inc., Customer Data Sec. Breach Litigation*, 978 F. Supp. 2d 1379, 1381 (J.P.M.L. 2013) (collecting cases); *In Re Comcast Corp. Employee Wage and Hour Employment Practices Litigation* 190 F. Supp. 3d 1344, 1345 n.2 (J.P.M.L. 2016) (denying centralization in favor of a Section 1404 transfer but emphasizing that a Section 1404 transfer is a viable option where "all parties agree to Section 1407 centralization [in the same district]."). Here, there is no agreement among the parties on either the propriety of a Section 1404 transfer or on the forum to which any transfers would lead. *See EMC Corp. v. Bright Response, LLC*, 2012 WL 4097707, at *3 (N.D. Cal. Sept. 17, 2012) ("[F]or [the] court [in a later-filed action] to issue a ruling [on a motion to transfer] would risk inconsistent results, exactly the same outcome to be avoided by the rule in the first place"). There is a great risk of inconsistent results given the discretionary nature of multiple Section 1404 transfer motions. *Id*.

Nor is the first-to-file doctrine applicable to this motion or a means by which the need for an MDL transfer can be avoided.  To begin with, the doctrine has no application in the case of an MDL transfer order in which it is common to transfer cases to a jurisdiction other than that of the first-filed case for coordination.  Further, the doctrine does not apply in favor of the *Solo* case here because, as the USSF has pointed out,[1] it does not apply where the forum of the first-filed case "lack[s] . . .any substantial connection" to the cases being considered for transfer.  *Guthy-Renker Fitness v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 272 (C.D. Cal. 1998).  And, the doctrine carries even less weight here because the *Morgan* plaintiffs are not parties to the *Solo* action, and that action was filed by only one putative member of the potential class in *Morgan* who has already indicated that she does not intend to participate in the class.  In such circumstances, the fact that the *Solo* case was filed first would carry little weight in a motion to transfer *Morgan*, especially since the *Solo* case has only had one brief hearing at which the court only considered USSF's motion to transfer and stayed all other case matters.[2]  For all of these reasons, there is no "reasonable prospect," *Gerber* at 1380, that Section 1404 transfer will yield the "far simpler and more efficient" solution that USSF and Solo inaccurately portray.  To the contrary, leaving the coordination issue to multiple competing transfer motions where the parties are advocating for three different fora is a recipe for duplicative and inconsistent rulings that an MDL transfer will prevent.

---

[1].  *See Solo v. United States Soccer Federation*, 3:18-cv-052150-JD, Dkt. 25, at 6–7 ("Solo lacks any connection to this forum . . . [and] U.S. Soccer likewise lacks any significant connection with this forum.").

[2] *See Solo v. United States Soccer Federation*, 3:18-cv-052150-JD, Dkt. 44, February 21, 2019 Minute Entry (scheduled Initial Case Management Conference and Motion to Dismiss Hearing not held; case stayed).

b. **The Cases Are Sufficiently Complex to Warrant MDL Treatment.**

USSF and Solo also argue against MDL treatment by claiming that the proceedings before the Panel are "not complex" cases, and, therefore, an MDL is not required. But this argument is belied by the multitude of complex legal arguments that USSF has already raised in its motion to dismiss the *Solo* case.[3] *See Solo v. United States Soccer Federation*, 3:18-cv-052150-JD, Dkt. 26. USSF's motion advances six separate legal grounds for dismissal, including a question of how to value different forms of pay it suggests is so difficult that Judge Posner threw up his hands and said "who knows." *See Solo v. United States Soccer Federation*, 3:18-cv-052150-JD, Dkt 26, at 15 (citing *Sims-Fingers v. City of Indianapolis,* 493 F.3d 768, 771 (7th Cir. 2007)). These type of legal questions cry out for a common answer through MDL coordination and centralization, as opposed to multiple rulings by different district courts. Moreover, neither USSF nor Solo dispute the benefits centralization will provide in preventing duplicative discovery and multiple depositions of the same witnesses who have information relevant to both actions. *See In re Auto Body Shop*, 37 F. Supp. 3d 1388, 1390 (J.P.M.L 2014) ("Transfer under Section 1407 . . . offer[s] the benefit of placing all related actions before a single judge who can structure pretrial proceedings to accommodate all parties' legitimate discovery needs while ensuring that common witnesses are not subjected to duplicative discovery demands."). While USSF goes on at length about the possible inconvenience to far-flung witnesses, it advocates an outcome here that could

---

[3] Additionally, the cases USSF cites in its opposition have far more simplistic sets of facts than those at issue in this case. For example, in *In re Equinox Wage and Hour Employment Practices Litigation*, the JPML denied a motion for centralization where the only issue was whether classes of personal trainers were paid in accordance with California's wage and hour statute. 764 F. Supp. 2d 1347, 1348 (J.P.M.L. 2011). In *In re: Best Buy Co., Inc. Cal. Song-Beverly Credit Card Act Litig.*, the only issue was whether "personal identification information, as that term is used in [a California statute], includes a cardholder's ZIP code." 804 F. Supp. 2d 1376, 1376 (J.P.M.L. 2011) (citing *Pineda v. Williams–Sonoma Stores*, 246 P.3d 612 (Cal. 2011)).

subject all parties and non-parties to inefficient duplication of discovery in multiple fora. The Panel can, and should, consolidate these cases to avoid such inefficiencies

Further, the fact that there are presently only two cases should not affect the JPML's assessment of the complexity of the cases' legal issues and the need for centralization and coordination. Neither USSF nor Solo cite any cases holding that the consolidation of two actions in an MDL is never appropriate. To the contrary, this has been done in a number of prior cases. *See* Mot. at 5. Moreover, it is possible that additional related cases will be filed by other players for the WNT within the statutes of limitations who are not plaintiffs in either *Morgan* or *Solo*, and such cases would require further coordination.

Section 1407 transfer is the only effective way to ensure that pretrial processes and legal rulings in the *Solo*, *Morgan*, and any future related actions are uniformly litigated and adjudicated, thereby avoiding duplicative, inefficient, and potentially inconsistent proceedings.

## II.   The Central District of California is the Proper District for Centralization

### a.   The Central District of California Has the Strongest Nexus to the *Morgan* and *Solo* Cases of the Three Districts Advocated Before the Panel

While the USSF headquarters is located in Chicago, the home training base of the Women's National Team ("WNT") is Carson, California, where USSF maintains a long-term lease at the Dignity Health Sports Park within the Central District of California.[4] This is the site of the U.S. Soccer National Training Center and the location of the WNT's locker room, which is used during the season and the offseason for training.[5] Morgan Decl. ¶¶ 2, 4. It also houses the offices of most of the WNT's administration, including its Press Officer, Aaron Heifetz; its Team Administrator, Molly Downtain; its Strength and Fitness Coach, Dawn Scott; its Equipment Manager, Ryan Dell;

---

[4] Until very recently, Dignity Health Sports Park was known as the StubHub Center.
[5] The Declaration of Alex Morgan is attached to this Reply.

its Head of Equipment, Tom Wahl; its Travel Agent with Anthony Travel, Joanne Davis; its Equipment Coordinator, Ryan Hopkins; the Manager of the Youth National Team Administration, Alfonso Cerda, who helps coordinate fields and times for the WNT; and the Youth National Team Equipment Manager, Jacob Schoch.  Morgan Decl. ¶ 5.  Many of the players congregate in the area during the offseason, rent houses and apartments in Manhattan Beach and the surrounding area, and train out of Dignity Health Sports Park using the gear, trainers and medical staff, and the team locker room.  Morgan Decl. ¶ 6.  Because USSF's medical staff is located in Los Angeles, Plaintiffs also travel and spend time in the area to receive medical treatment.  Morgan Decl. ¶ 4.  In short, while they travel extensively, and play games all over the world, Los Angeles is the closest thing to the WNT's team headquarters.  Morgan Decl. ¶ 5.

USSF's counter, that the Carson facility "has, at times, served as a training facility for *all* of its teams, including 15 Youth National teams," is of no moment.  USSF Opp. at 18 (emphasis in original).  If anything, the breadth of USSF's use of the facility serves only to establish *its strong* connection to the Central District of California.  USSF goes on to try to minimize the importance of the Carson facility because WNT participates in training camps and games in other locations, but the dispersion of the places where the WNT, as professional athletes, train and work is neither disputed nor relevant to the issue of nexus.  The undisputed point remains that the players on the WNT, and the USSF's operation of the WNT, have more activities in, and a much more significant nexus to, the Central District of California, than either the Northern District of California or the Norther District of Illinois.  It is where the WNT is at home, where it most regularly trains, where it plays some of its games, and where one of the lead putative class representatives, Alex Morgan, resides.  *See In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 398 F. Supp. 2d

1371, 1372 (J.P.M.L. 2005) (recognizing the nexus between a particular transferee forum and the litigation as an important factor in deciding the MDL forum).

### b. The Class Plaintiffs' Choice of Forum Is Entitled to Substantial Weight.

Adding to the strong nexus of the claims to the Central District of California, the Plaintiffs' choice of that forum is entitled to substantial weight. *See Peace v. Parascript Mgmt., Inc.*, 2013 WL 12137565, at *3 (C.D. Cal. Mar. 18, 2013) (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)). USSF fails to "make [the] strong showing of inconvenience [that would] warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *see also Lou v. Belzberg*¸834 F.2d 740, 739 (9th Cir. 1987) (requiring a showing that "the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter" before the court will lessen the weight of this factor to "minimal," not no, consideration).

USSF's attempts to minimize this factor are unavailing. First, contrary to USSF's assertions, the Class Plaintiffs in *Morgan*, who constitute a large percentage of the putative class, routinely train and participate in camps in California, and play games in California at least annually. Morgan Decl. ¶ 3. Further, one of only four Plaintiffs with standing to bring a Title VII claim on behalf of the class is a resident of the Central District of California.[6] The single case

---

[6] Before filing a suit in federal court alleging sex discrimination under Title VII, a plaintiff must file a timely charge of sex discrimination and receive a right to sue letter from the EEOC. 42 U.S.C. §2000e–16(c); *Vinieratos v. U.S., Dep't of Air Force Through Aldridge*, 939 F.2d 762, 768 (9th Cir. 1991). Plaintiffs Alex Morgan, Megan Rapinoe, Becky Sauerbrunn, and Carli Lloyd filed a charge of sex discrimination with the EEOC and received right to sue letters. *See Morgan et al. v. United States Soccer Federation,* 2:19-cv-01717-RGK-AGR, Dkt. 2, Ex. A to Complaint, Right to Sue Letters. USSF argued in its motion to dismiss Solo's complaint that she failed to exhaust administrative remedies because she filed her case before the EEOC issued a right to sue letter to her. *See Solo v. United States Soccer Federation*, 3:18-cv-052150-JD, Dkt. 26 ("Solo cannot bring a claim unless and until the EEOC issues a right to sue letter and has failed to exhaust her

cited by the USSF in which a plaintiff's choice of forum was given much less weight involved the inapposite situation in which the class action filed had no connection to the forum, and no resident plaintiff. *See Bibo v. Federal Express,* 2007 WL 2972948 *2 (N.D. Cal. Oct. 10, 2007) (distinguishing *Lou v. Belzberg* and finding that, in a putative class action, plaintiffs' choice of forum is "afforded substantial weight" where "plaintiffs reside in this district" as the district "has a clear interest in protecting such residents"); *Van Slyke v. Capital One Bank*, 503 F. Supp.2d 1353, 1362 (N.D. Cal. 2007) (declining to transfer a putative class action under *Lou* and finding plaintiff's choice of forum is a factor that "cuts against transfer"). Moreover, as some of the representative Plaintiffs are residents in the Central District of California, USSF does not and cannot argue forum shopping, so there is no basis to give "reduced weight on plaintiffs' choice of forum" because of any forum shopping concern. *Alibris v. ADT, LLC*, 2014 WL 12600829, at *2 (C.D. Cal. Dec. 30, 2014) (citing *In re Ferrero Litig.,* 768 F. Supp. 2d 1074, 1078 (S.D. Cal. 2011)).

For all of these reasons, "Plaintiffs' choice of forum ***remains*** significant in a class action," and weighs heavily in favor of consolidating these cases in the Central District of California. *Bibo*, 2007 WL 2972948, at *2 (emphasis added). Indeed, since that court is where any class action would eventually be sent to trial (as the *Solo* case is not a class case), there is significant efficiency in having that court be the situs of the MDL.

### III. The Central District of California Is Superior to the Other Proposed Districts

#### a. The Northern District of California Is Not the Proper Forum

---

administrative remedies. Accordingly, Solo's Title VII claim should be dismissed."). Alex Morgan resides in the Central District of California.

The minimal connection of the Northern District of California to the plaintiff in that action, (who resides in North Carolina), the underlying events, and the witnesses make it ill-suited to be the transferee forum for an MDL of these actions. USSF has already argued this lack of connection and advocated for transfer away from that district.[7] While Solo relies on the first filing of her action in August 2018 to advocate for that forum, there has been minimal to no progress in the case to date, and, as noted above, the first-to-file doctrine has little weight when there is no meaningful connection between that district and the claims and parties at issue. *See supra* at 5. Moreover, Solo's choice of forum as a single plaintiff who intends to opt out of any class action is entitled to much less weight than the forum choice of the entire current roster of the WNT team, including the only four representative plaintiffs who exhausted their administrative remedies and waited to obtain a right to sue letter from the EEOC before filing a class action to assert these claims.

### b. The Northern District of Illinois Is Not the Proper Forum

USSF strenuously argues in favor of its preferred forum, the Northern District of Illinois, a forum which no plaintiff has chosen. But it cannot make the compelling showing of superior convenience and nexus that would be required to send an MDL to a forum that no plaintiff has chosen and in which neither of the current cases would eventually go to trial. While the USSF may wish to forum shop for a district that is the location of their formal headquarters and attorneys, this is not a basis for sending the MDL to a district that no plaintiff has chosen.

The USSF has identified only four of its potential witnesses, out of the many scattered around the country, who reside in the Northern District of Illinois. At the same time, it admits that many of its key witnesses reside many states away and it does not dispute that it will have other

---

[7] *Solo v. United States Soccer Federation*, 3:18-cv-052150-JD, Dkt. 25.

key witnesses, such as one of their lead negotiators and principal outside counsel, Mr. Sauer, who reside in the Central District of California. Other key USSF witnesses who are located in Los Angeles at the WNT training facility include the team administration that have their offices there. None of those witnesses would find Illinois to be a more convenient forum.

Nor can the USSF support their forum choice by making the condescending argument that many of the Plaintiffs would find Chicago more convenient because it is more "centralized" in its geographic location and the Plaintiffs are scattered throughout the country. With all due respect, the intelligent women on the WNT are more than capable of deciding for themselves which forum is more convenient for them to prosecute their claims. All of them have rejected the Northern District of Illinois in favor of a different forum. It is also not surprising that all but Solo have chosen the Central District of California as the most appropriate and convenient forum for them, since, as described in Plaintiffs' opening brief and above, Plaintiffs regularly travel to and spend time in Los Angeles for WNT training, games, and business. *Compare* Opp. at 16 (speculating that "proceeding in the Central District of California would subject a majority of the Plaintiffs…to long-distance travel of many hours or days each way…creating significant inconveniences, complications, increased costs, and disruption of work schedules and daily lives.") *with* Opp. at 14 (arguing that former U.S. Soccer President Sunil Gulati and current U.S. Soccer President Carlos Cordeiro "regularly travel[] to Chicago for U.S. Soccer business" so it is "a more convenient and appropriate forum"). Nor does a single plaintiff's trip to Chicago to sign the collective bargaining agreement constitute a material nexus to the claims, which are under Title VII and the EPA, not the collective bargaining agreement.

Finally, the Central District of California is superior to the Northern District of Illinois as an MDL situs because of the relative speed of adjudication. As mentioned in Plaintiffs' opening

12

brief, the time for a civil case to go from filing to trial is 38.3 months in the Northern District of Illinois, compared to just 21.5 months in the Central District of California. Defendants try to minimize this point, arguing the relative basis for comparison should be the median time for pretrial proceedings, but neglect to mention that such a comparison is no better for them. The Central District of California's median of 5.6 months is significantly lower than the 8.5 months for the Northern District of Illinois. Under every metric, it cannot be disputed that the Central District of California is moving cases through its docket more quickly, making it a better option than the Northern District of Illinois to be the situs of the MDL. It also would be the forum where the class action would be tried, while no trial would ever take place in the Northern District of Illinois after pre-trial coordination as no case has been filed there.[8]

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the JPML reject USSF's and Solo's oppositions and grant Plaintiffs' Motion for Transfer of Actions to the Central District of California pursuant to 28 U.S.C. § 1407.


Dated:  April 19, 2019                                      WINSTON & STRAWN LLP


                                                            By:  /s/ *Jeffrey L. Kessler*
                                                                 Jeffrey L. Kessler
                                                                 jkessler@winston.com
                                                                 David G. Feher
                                                                 dfeher@winston.com
                                                                 WINSTON & STRAWN LLP
                                                                 200 Park Avenue

---

[8] *See* U.S. District Courts–Median Time Intervals from Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending September 30, 2018, available at https://www.uscourts.gov/sites/default/files/data_tables/jb_c5_0930.2018.pdf

13

New York, New York 10166
Telephone: (212) 294- 6700
Facsimile: (212) 294-4700

Cardelle B. Spangler
cspangler@winston.com
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

Diana Hughes Leiden
dhleiden@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue, 38th Floor
Los Angeles, California 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

Jeanifer E. Parsigian
jparsigian@winston.com
WINSTON & STRAWN LLP
101 California St., 34th Floor
San Francisco, CA 94111
Telephone: (491) 591-1000
Facsimile: (491) 591-1400

Attorneys for Plaintiffs
ALEX MORGAN, MEGAN RAPINOE,
BECKY SAUERBRUNN, CARLI LLOYD,
MORGAN BRIAN, JANE CAMPBELL,
DANIELLE COLAPRICO, ABBY
DAHLKEMPER, TIERNA DAVIDSON,
CRYSTAL DUNN, JULIE ERTZ,
ADRIANNA FRANCH, ASHLYN HARRIS,
TOBIN HEATH, LINDSEY HORAN, ROSE
LAVELLE, ALLIE LONG, MERRITT
MATHIAS, JESSICA MCDONALD,
SAMANTHA MEWIS, ALYSSA NAEHER,
KELLEY O'HARA, CHRISTEN PRESS,
MALLORY PUGH, CASEY SHORT,
EMILY SONNETT, ANDI SULLIVAN AND
MCCALL ZERBONI